UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY L. RICE,

      Plaintiff,                        CIVIL ACTION NO. 12-15690

     v.                              DISTRICT JUDGE GEORGE CARAM STEEH

                                      MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 11, 14)**

Plaintiff Mary L. Rice challenges the Commissioner of Social Security's ("the Commissioner") final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 11, 14). Plaintiff also responded to Defendant's motion (Dkt. No. 16). Judge George Caram Steeh referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

**I.    RECOMMENDATION**

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.    DISCUSSION**

    *A.    Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.    *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III. REPORT

#### A. *Administrative Proceedings*

Plaintiff applied for disability insurance benefits on March 22, 2011 and supplemental security income on March 9, 2011. On both applications, Plaintiff alleged that she became disabled on January 15, 2010 (Tr. 14). After the Commissioner initially denied Plaintiff's application, she appeared with counsel for a hearing before ALJ Ethel Revels, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 14-21). Plaintiff requested an Appeals Council review (Tr. 6-7). On November 30, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-3).

#### B. *ALJ Findings*

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her alleged onset date in January of 2010 (Tr. 16).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: diabetes type II, hypertension, headaches, and obesity (Tr. 16).

At step three, the ALJ found that Plaintiff did not have impairments that met or medically equaled one of the listings in the regulations (Tr. 17).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> medium work . . . except due to moderate limitations in the ability to maintain concentration for extended periods because of pain and fatigue, all work must be simple with repetitive tasks, i.e., unskilled work; no involvement with frequent climbing of stairs or ramps; [and,] no climbing of ropes, ladders, or scaffolds.

(Tr. 17).

At step four, the ALJ found that Plaintiff was not disabled because she could perform her past relevant work as a mail sorting clerk (Tr. 20).

Alternatively, at step five, the ALJ found Plaintiff was not disabled because there are a significant number of jobs available in the national economy that Plaintiff could perform at the medium level, such as assembly worker, packaging worker, or visual inspector (Tr. 20-21).

### C. Administrative Record

#### 1. Plaintiff's Hearing Testimony and Statements[1]

Plaintiff was 59 years old on her hearing date. She was diagnosed with diabetes in 2010. Plaintiff also has hypertension – that is controlled with medication – and experiences low energy; shortness of breath; dizzy spells and lightheadedness 20 days a month in the mornings; and, numbness and tingling in her legs, feet, arms, left hand, shoulders, and side (Tr. 35-37, 39, 41-42, 48, 57). Plaintiff had a Transient Ischemic Attack ("TIA")[2] in November 2010, but had not experienced another as of the hearing date (April 10, 2012) (Tr. 43).

---

[1] Plaintiff's testimony before the ALJ reflects her subjective view of her medical condition, abilities, and limitations. It is set forth from Plaintiff's perspective; it is not a factual finding of the ALJ or this Magistrate Judge.

[2] "A transient ischemic attack (TIA) is like a stroke, producing similar symptoms, but usually lasting only a few minutes and causing no permanent damage." *See* http://www.mayoclinic.com/health/transient-ischemic-attack/DS00220 (last visited December 20, 2013).

Sitting for 30 minutes relieves Plaintiff's dizziness and lightheadedness (Tr. 49). Her doctor suggested that she elevate her legs two or three times a day to help with the tingling and numbness in her legs and feet (Tr. 38). Plaintiff sometimes has difficulty holding objects in her left (non-dominant) hand because of the tingling and numbness, but it does not interfere with her daily activities (Tr. 37, 41).

Plaintiff takes insulin twice daily and additional medication for diabetes and hypertension. She was using a cane for the last two to three months to maintain her balance – it was not prescribed by a doctor. She also elevates her legs above her waist 2-3 times a day for 30-60 minutes, and takes a 60-90 minute afternoon nap daily (Tr. 36-39, 42, 65).

Plaintiff can stand for 30 minutes, walk a block, sit for two hours, and lift 10 pounds (Tr. 57, 62-64).

When asked to specifically identify any medical problems that would prevent her from working, Plaintiff answered: diabetes, hypertension, and numbness and tingling in her legs (Tr. 35).

### 2. Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education, and vocational experience who cannot frequently climb stairs or ramps; and, can never climb ropes, ladders, or scaffolds. The individual needs a relatively clean air environment; is limited to simple, repetitive tasks; and, cannot crouch or crawl (Tr. 72). The VE testified that such an individual could perform Plaintiff's past relevant work as a mail sorter, and could also work at the medium exertional level as an assembler, packager, or visual inspector (Tr. 73).

In a second hypothetical, the ALJ asked the VE to assume the individual could not frequently stoop or kneel. The VE testified that such an individual could still perform the

identified jobs (Tr. 74). Of particular note, the VE testified that these jobs did not require any stooping or kneeling (Tr. 74).

In a third hypothetical, the ALJ asked the VE to assume the individual could constantly use her left arm and required the option to sit and stand at will. The VE testified that, while there would be no jobs available at the medium exertional level – approximately 3,500 jobs would still be available in southeast Michigan at the light exertional level (Tr. 74).

Finally, the VE testified that the individual would be precluded from work if she: (1) had to elevate her legs at waist level or above 2-3 times a day for 30 minutes at unscheduled times; (2) would miss four days of work a month; or, (3) required a cane to walk (Tr. 76-77).

### D.     *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ made five errors: (1) the ALJ erred at step two of the analysis when she found Plaintiff's bilateral shoulder problem was non-severe; (2) the ALJ made an improper credibility finding; (3) the ALJ failed to give proper deference to the opinion of Plaintiff's treating physician; (4) the ALJ erred in finding the Plaintiff's past work as a mail sorting clerk constituted substantial gainful activity; and, (5) the ALJ presented an inaccurate hypothetical to the VE. Plaintiff's claims of error are without merit.

#### 1.     **The ALJ's Step Two Determination**

Plaintiff first argues that the ALJ erred at step two in finding that her bilateral shoulder and ulnar nerve impairments were not "severe"[3] and failing to consider the fact that she cannot perform the lifting requirement of medium work – which requires lifting up to 50 pounds.

In the Sixth Circuit, step two of the disability analysis has been construed as a *de minimis* hurdle in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Murphy v. Sec'y of HHS*, 801 F.2d 182, 185 (6th Cir. 1986); *Salmi v. Sec'y of HHS*, 774 F.2d 685, 690-92 (6th Cir. 1985); *Farris v. Sec'y of HHS*, 773 F.2d 85, 89-90 (6th Cir. 1985)). "Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862 (citing *Farris v. Sec'y of HHS*, 773 F.2d 85, 90 (6th Cir. 1985)). But, the omission of a severe impairment is harmless error if the ALJ considered it in the remaining steps of the analysis. *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987); *see also* SSR 96-8p ("[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe.").

In determining Plaintiff's RFC, the ALJ considered Plaintiff's shoulder impairment and her lifting ability:

> [Plaintiff] stated she is able to lift up to 10 pounds; she specifically stated that she could not lift 20 pounds.
>
> \*   \*   \*
>
> [Plaintiff] was an inpatient from April 4, 2010[] to April 6, 2010[] due to complaints of dizziness for the prior two weeks. . . . It was noted that [she] reported tingling in her ulnar nerve distribution bilaterally.
>
> Gabapentin was continued for ulnar nerve neuropathy.

---

[3]The ulnar nerve "helps you move your hand and wrist." *See* http://www.nlm.nih.gov/medlineplus/ency/article/000789.htm (last visited December 18, 2013).

-8-

> \* \* \*
>
> A residual functional capacity statement . . . reflects limitations in lifting, but undetermined[.]
>
> \* \* \*
>
> On March 7, 2012, [Plaintiff] . . . complained of pain in her left shoulder with no radiation. She stated she had constant pain in her right shoulder. She stated her pain rated 9 of 10 with 10 being excruciating. She said the pain got better with movement, but was worse at night. She reported numbness and tingling in the left arm. [Plaintiff] took no medication for the pain she reported.

(Tr. 18-19). The ALJ's failure to specifically mention Plaintiff's left shoulder tendonitis, left arm carpel tunnel syndrome, left shoulder impingement syndrome, rotator cuff syndrome of the left shoulder, and Raynaud's syndrome (Dkt. No. 11 at p. 10) does not warrant a remand. *See Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) ("[t]he mere existence of [plaintiff's] impairments . . . does not establish that [she] was significantly limited from performing basic work activities for a continuous period of time"). When specifically asked to identify any medical conditions that would prevent her from working, Plaintiff did not mention shoulder problems (Tr. 35). Plaintiff's treating physician, Dr. Sinda Tomy, also did not mention Plaintiff's shoulder problems among her limiting medical conditions (Tr. 397-401).

Because the ALJ considered Plaintiff's shoulder impairment when determining her RFC, this Magistrate Judge finds that any error in the ALJ's step two determination was harmless.[4]

### 2. Credibility Determination

Plaintiff argues that the ALJ made an improper credibility finding and ignored the directives of SSR 96-7p, instead relying on boilerplate language. Specifically, Plaintiff argues

---

[4] Plaintiff also argues, in her reply brief, that "the bilateral shoulder issues would materially affect the ability to perform medium exertional work" (Dkt. No. 16 at p. 2). But, even if true, a remand would still not be warranted because the VE determined that there were a sufficient number of *light-level* jobs that Plaintiff could perform (Tr. 73-74).

that the ALJ failed to explain why she did not find Plaintiff's statements regarding fatigue, lack of energy, pain, and need to take an afternoon nap fully credible.

>    SSR 96-7p states:
>
>    The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

"A claimant must present more than [her] subjective complaints of disabling symptoms." *Hughes v. Astrue*, No. 3:06CV0387, 2008 WL 554756, at *8 (S.D. Ohio Feb. 27, 2008) (citing 20 C.F.R. § 404.1529 ("statements about your pain or other symptoms will not alone establish that you are disabled"); SSR 96-7p).  Plaintiff argues that her bilateral ulnar nerve radiculopathy, lower extremity weakness, deep vein thrombosis, the length and frequency of her medical treatment, the nature and extent of her treatment, and the side effects of her medication support her subjective reports.  This Magistrate Judge disagrees.

On April 4, 2010, Plaintiff had full range of motion, good strength, and equal sensation in all extremities; she could stand up and walk without difficulty; there was no muscle weakness; and, no swelling in her lower limbs or joints (Tr. 247, 250, 254, 260, 271).

On April 6, 2010, May 19, 2010, June 23, 2010, August 30, 2010, November 15, 2010, December 20, 2010, October 3, 2011, and November 9, 2011, Plaintiff had no swelling in her extremities (Tr. 262, 335, 338, 344, 347, 351, 484, 505-506).

On November 10, 2010, Plaintiff experienced right lower extremity numbness, but the symptoms resolved gradually, and her right lower extremity weakness was improving (Tr. 404, 421, 425). There was no weakness, tenderness, deformity, or swelling in her musculoskeletal system; no loss of sensation in her right lower extremity; no swelling in her lower extremities; and, no abnormality in range of motion, stability, muscle strength, or tone in her upper or lower extremities (Tr. 404-405, 413, 420, 429). Plaintiff's reflexes were equal and symmetrical (Tr. 405). She did not experience any numbness or tingling (Tr. 420).

On November 15, 2010, Plaintiff had numbness in her right lower extremity that resolved after a few hours (Tr. 347).

On January 10, 2011, Plaintiff's muscle strength was 5 out of 5 bilaterally in her upper and lower extremities (Tr. 291).

On February 28, 2011, Plaintiff had no tingling or numbness in her extremities, and normal range of movement in all four extremities; her L1 radiculopathy was stable (Tr. 353-354). On March 17, 2011, Plaintiff did not have any pain in her leg or thigh; she had full range of motion in her musculoskeletal system (Tr. 305).

On March 21, 2011, Plaintiff had chronic bilateral lower extremity tingling secondary to diabetic neuropathy, but no lower extremity swelling (Tr. 356-357).

On July 26, 2011, Plaintiff had no swelling in her extremities, and her straight-leg raising test was negative (Tr. 493).[5]

---

[5]A straight-leg raise test helps determine if an individual has nerve root irritation. A negative test means the individual did not experience pain when the leg was elevated between 30 and 60 degrees, and it helps rule out nerve root irritation as the cause of pain. *See* http://meded.ucsd.edu/clinicalmed/joints6.htm (last visited December 20, 2013).

On August 24, 2011, Plaintiff's numbness and tingling was well controlled with medication (Tr. 490).

On October 26, 2011, Plaintiff had no numbness, tingling, or weakness; her strength was 5 out of 5 in all four extremities (Tr. 487).

On March 7, 2012, Plaintiff's diabetes and hypertension were well controlled; and, her TIAs, hyperlipidemia, osteoarthrosis, lack of coordination, and shortness of breath were progressing as expected (Tr. 511-513).[6]

Based on the evidence of record, this Magistrate Judge finds that remanding the case for further discussion regarding Plaintiff's credibility would be a useless formality. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("[w]hen 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game'").[7] Substantial evidence supports the ALJ's credibility determination.

### 3.     Treating Source Rule

Dr. Tomy opined that Plaintiff: (1) needs to elevate her legs with prolonged sitting; and, (2) would likely miss more than four days of work a month (Tr. 400). Plaintiff argues that the ALJ failed to give proper deference to Dr. Tomy's opinions.

---

[6] Plaintiff reported that her shortness of breath was under control (Tr. 512).

[7] Notably, Plaintiff never complained about fatigue to her physicians, and there is no evidence that an afternoon nap is medically necessary. At the hearing, Plaintiff testified that she takes a nap because she is tired and lacks energy (Tr. 65); she did not testify that the reason for her nap was due to any of her impairments or medications.

The Sixth Circuit has recently instructed ALJs on how to assess medical opinions such as Dr. Tomy's:

> Under the pertinent regulations, more weight is generally given to the opinion of a treating physician. As long as the treating physician's opinion regarding the nature and severity of the claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence, it will be given controlling weight. If the ALJ chooses not to give the treating physician's opinion controlling weight, he or she must determine what weight to give it by looking at various factors, including the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the opinion; its consistency with the record as a whole; the specialization of the physician or doctor rendering the opinion; and other factors that support or contradict the opinion.

*Johnson v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2013 WL 5613535, at *7 (6th Cir. Oct. 15, 2013) (internal citations and quotations omitted). "[A]n ALJ's failure to discuss the factors . . . may constitute harmless error [] if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it[.]" *Parker v. Comm'r of Soc. Sec.*, No. 12-12485, 2013 WL 4604907, at *10 (E.D. Mich. Aug. 29, 2013) (internal quotations omitted). "An opinion may be patently deficient if the treating source offers no explanation to support it." *Fleming v. Comm'r of Soc. Sec.,* No. 10-25, 2011 WL 3049146, at *9 (E.D. Tenn. July 5, 2011) (citing *May v. Astrue,* 09-00090, 2009 WL 4716033, at *8 (S.D. Ohio Dec. 9, 2009) (finding opinion patently deficient where source simply checked boxes about plaintiff's grasping ability and failed to provide supporting explanations or objective evidence)).

Dr. Tomy simply checked the box that says Plaintiff would be absent more than four days per month, and his opinion regarding Plaintiff's need to elevate her legs is vague. When asked how may hours in an eight-hour day Plaintiff's legs should be elevated, Dr. Tomy indicated "as

-13-

much as possible."[8] He did not provide any supporting explanation or objective evidence, nor is there such evidence in the record. As such, this Magistrate Judge finds an error in the ALJ's treatment of Dr. Tomy's opinions – *if any* – was harmless.

### 4. Plaintiff's Past Relevant Work as a Mail Sorting Clerk

Plaintiff argues that the ALJ erred at step four of the disability analysis when she found Plaintiff could perform her past work as a mail sorting clerk. Plaintiff contends that her previous job as a mail sorting clerk does not qualify as substantial gainful activity because she never worked for a sufficient period of time or earned enough money as a mail sorting clerk. Plaintiff's argument lacks merit.

"The ALJ did not end her analysis at step four – she continued to step five, and found that Plaintiff could perform other work that existed in significant numbers in the national economy. As such, an error at step four – *if any* – was harmless." *Dunnett v. Comm'r of Soc. Sec.*, No. 12-10930, 2013 WL 4604445, at *15 (E.D. Mich. Aug. 29, 2013) (emphasis in original); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("[a]lthough the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five"). The ALJ's step four conclusion that Plaintiff could perform her past relevant work as a mail sorting clerk had nothing to do with the ALJ's step five conclusion that Plaintiff could perform jobs as a assembly worker, packaging worker, or visual inspector.

### 5. Hypothetical to the VE

Plaintiff's final argument is that the ALJ presented an inaccurate hypothetical to the VE because it did not account for her limitations in lifting, walking, standing, sitting, bending, and

---

[8]"As much as possible" implies that, at some point, Plaintiff's opportunity to elevate her legs, while beneficial, may not be medically necessary.

-14-

stooping.[9] In support of her argument, Plaintiff refers the Court to Dr. Tomy's Medical Questionnaire in which he indicated that Plaintiff's ability to lift, stand, walk, and sit were affected by her impairments; and, that Plaintiff could rarely stoop (Tr. 399-401). Not only did Dr. Tomy fail to provide any supporting explanation or objective evidence for his opinions, he could not even determine how many pounds Plaintiff could lift; or, how many hours she could stand, sit, or walk in an eight-hour day. And, the VE testified that the identified jobs that Plaintiff could perform did not require frequent stooping or kneeling (Tr. 73-74).

This Magistrate Judge finds the ALJ's decision is supported by substantial evidence and should not be disturbed on appeal.

## IV. CONCLUSION

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474

---

[9]Plaintiff also argues that the ALJ did not pose any questions to the VE regarding her ability to perform medium work. This argument lacks merit. At the hearing, the ALJ specifically asked the VE if there were jobs Plaintiff could perform at the medium exertional level, based on the hypothetical question presented (Tr. 73).

F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                           s/Mark A. Randon
                                           Mark A. Randon
                                           United States Magistrate Judge

Dated: January 9, 2014

### Certificate of Service

     *I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 9, 2014, by electronic and/or ordinary mail.*

                                           *s/Eddrey Butts*
                                           *Case Manager for Magistrate Judge Mark A. Randon*